UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY A. WHITE,

                                    Petitioner,

                                                        9:07-CV-1175
v.                                                      (FJS/TWD)

JAMES CONWAY,

                                    Respondent.
_____

APPEARANCES:                                OF COUNSEL:

EASTON THOMPSON KASPEREK SHIFFRIN LLP        DONALD M. THOMPSON, ESQ.
Counsel for Petitioner
16 West Main Street, Suite 243
Rochester, New York 14614

HON. ERIC T. SCHNEIDERMAN                    THOMAS B. LITSKY, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Respondent
120 Broadway
New York, New York 10271

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

       This matter has been referred to me for Report and Recommendation by the Honorable

Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b).

Currently pending before the Court is Petitioner's letter motion requesting an evidentiary hearing

on the issue of equitable tolling.  (Dkt. No. 29.)  For the reasons discussed below, I recommend

that the Court deny the request for an evidentiary hearing, find that equitable tolling applies to

excuse the untimeliness of the petition, and deny the petition on its merits.

## I.     FACTUAL AND PROCEDURAL SUMMARY

Petitioner Gregory White was convicted of rape and sodomy.  (State Court Records, Ex. D at 2071-74.)   His conviction was affirmed on appeal.  *People v. White*, 27 A.D.3d 884 (2006). The New York Court of Appeals denied leave to appeal on June 22, 2006.  (Dkt. No. 1 at 2; *see also People v. White*, 7 N.Y.3d 764 (2006).)  Petitioner's conviction became final for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") ninety days later, on September 20, 2006.  Accordingly, he was required to file his petition for a writ of habeas corpus on or before September 20, 2007.

Petitioner did not receive notice that the Court of Appeals had denied him leave to appeal until September 21, 2006.  (Dkt. No. 28 at 4, 21-22.)  Petitioner began attempting to prepare his own petition for a writ of habeas corpus in late September 2006.  *Id*. at 4, 24-25.  Petitioner struggled, however, because he did not have access to his trial attorney's case file or regular access to the prison law library.  *Id*. at 4.  His sister ultimately agreed to find habeas counsel for him and began contacting attorneys.  *Id*. at 5.

One of the lawyers who Petitioner's sister contacted was Donald Thompson.  *Id*.  After their initial telephone contact, Petitioner's sister sent him a copy of the appellate brief that a previous attorney had prepared for Petitioner.  *Id*.  Shortly thereafter, Mr. Thompson agreed to represent Petitioner.  *Id*.  On April 7, 2007 Petitioner wrote Mr. Thompson a lengthy letter to which he never received any response.  *Id*. at 5; Dkt. No. 28-1 at 3.

On June 8, 2007 Mr. Thompson sent Petitioner a letter and written retainer agreement. (Dkt. No. 28-1 at 85-88.)  In that letter, Mr. Thompson stated that Petitioner's "federal habeas petition must be filed no later than September 22, 2007."  *Id*. at 86 (emphasis added).

As time went by, Petitioner and his sister grew 'greatly concerned' about Mr. Thompson's failure to communicate and investigate, but with the deadline to file the habeas petition fast approaching there was not enough time or money to hire a new attorney.  (Dkt. No. 28 at 5.)

On September 6, 2007 Petitioner's sister wrote to him regarding a conversation she had with Mr. Thompson.  (Dkt. No. 28-1 at 5.)  She stated that Mr. Thompson "is planning on filing the petition by September 21, and [Petitioner] should be getting a copy no later than Wednesday, September 12 . . . ."  *Id.* (emphasis added).  She further stated that "I was most concerned on the timing and when he would respond to you, so we did not discuss a lot of the substance of the arguments at this stage . . . . In short, while I'm not satisfied at his earlier lack of response, he is planning on filing something that we will both have a chance to see at least a week ahead."  *Id.*

On September 12, 2007 Mr. Thompson sent Petitioner a copy of the habeas petition by UPS overnight delivery.  (Dkt. No. 16-3 ¶ 6; Dkt. No. 28-1 at 90.)  He stated that "[a]lthough, since you are represented, I can sign [the petition] on your behalf, I prefer to have both signatures on the form to be filed."  (Dkt. No. 28-1 at 90.)

On September 14, 2007 Petitioner was called from his cell to sign the habeas petition.  (Dkt. No. 28 at 5.)  Petitioner does not know what happened to the petition after he signed it.  *Id.*

Mr. Thompson declares that in his twenty years of experience of sending and receiving mail from Attica, "[s]tandardly, and virtually without fail," mail takes only one day to reach his office from Attica.  (Dkt. No. 16-3 ¶ 8.)  In this case, however, "through no fault of the petitioner, the Petition was not received in my office until September 21, 2007."  *Id.* ¶ 11.  Mr. Thompson immediately filed the petition.  *Id.*

In response, Respondent argued that the petition was untimely.  (Dkt. No. 12.)

Mr. Thompson argued that the statute of limitations should be equitably tolled.  He argued that the petition was late because of an unforseeable delay in the mail.  (Dkt. No. 16.)  He "request[ed] a hearing [regarding] the factual basis for the correctional facility's delayed mailing in this case, so that petitioner's claim relative to a sufficient predicate for invocation of equitable tolling might be more fully developed."  *Id*. at 30.  He did not advise the Court that he had been retained in April 2007, that he miscalculated the due date for the petition in both the June 2007 written retainer agreement and his later telephone conversation with Petitioner's sister, or that it was his decision to have Petitioner sign the petition rather than simply filing with his signature alone.

On January 18, 2011 United States Magistrate Judge George H. Lowe[1] recommended denying the petition as untimely.  (Dkt. No. 17.)  He found that the petition was due on September 20, 2007 because the AEDPA statute of limitations is one year.  *Id*. at 4.  He noted that the prison mailbox rule, under which the petition would have been deemed filed on September 14 when Petitioner gave it to the corrections officer, did not apply because Petitioner was represented by counsel.  *Id*. at 5.  He found that equitable tolling should not apply because no "extraordinary circumstances" prevented Petitioner from timely filing the petition.  *Id*. at 6-8.  Specifically, he found that "Petitioner's counsel could have avoided . . . problems by mailing the petition earlier or by personally bringing the petition to Petitioner for his signature well before the deadline."  *Id*. at 7.  Because Judge Lowe found the petition untimely, he declined to address

---

[1]      Judge Lowe retired on February 9, 2012.  On February 10, 2012, Chief United States District Judge reassigned this case to me.  (Dkt. No. 37.)

the merits of the petition.  *Id*. at 1-2.

Mr. Thompson filed objections to the Report-Recommendation.  (Dkt. No. 18.)  He argued that the Court should apply the prison mailbox rule.  He also filed supplemental objections.  (Dkt. No. 19.)  In the supplemental objections, he discussed a Southern District case, *Dillon v. Conway*, at length.  Mr. Thompson  noted that the *Dillon* case was pending before the Second Circuit and could clarify the circumstances under which district courts should apply the doctrine of equitable tolling to untimely habeas petitions.  *Id*.

On March 31, 2011 Judge Scullin adopted Judge Lowe's Report-Recommendation and entered judgment against Petitioner.  (Dkt. Nos. 20-21.)  Judge Scullin found that the prison mailbox rule did not apply because Petitioner was represented by counsel.  (Dkt. No. 20 at 5.)  He thus found that the petition was "filed" on September 21. Judge Scullin noted that "Petitioner does not contend that Magistrate Judge Lowe improperly determined the date that his conviction became final; rather he contends that Magistrate Judge Lowe should have equitably tolled the statute of limitations because he filed his petition only one [] day late, and that this late filing was the result of confusion stemming from language in several cases providing that the statute did not begin to run until the day after the conviction became final."  *Id*. at 8. Judge Scullin agreed that the petition should have been filed on or before September 20.  *Id*.  Moreover, Judge Scullin agreed that Petitioner had not demonstrated any extraordinary circumstances warranting equitable tolling because delays in prison mail are not "extraordinary."  *Id*. at 11-12.  Judge Scullin went on to address and reject the merits of the petition.  *Id*. at 12-42.

Petitioner appealed.  (Dkt. No. 22.)

On appeal, Mr. Thompson asserted that "there are also facts in this case, if developed

during the hearing petitioner requested, that would support a finding that petitioner diligently pursued his rights." *White v. Conway*, No. 11-1362, Dkt. No. 31-2 (2d Cir. May 13, 2011).  He did not specify what those facts were.

Later, Petitioner filed a *pro se* addendum with the Second Circuit.  *White v. Conway*, No. 11-1362, Dkt. No. 42-1 (2d Cir. July 12, 2011).  In contrast to the argument his attorney advanced, Petitioner argued that his petition was one day late because his attorney misunderstood when it was due and delayed filing it.  Petitioner attached several pertinent documents: (1) the retainer agreement with his attorney in which Mr. Thompson stated that "your federal habeas petition must be filed no later than September 22, 2007" (emphasis added); (2) the letter to Petitioner from his sister dated September 6, 2007, in which she reported that Mr. Thompson said that he was "planning on filing the petition by September 21"(emphasis added); and (3) the letter in which Mr. Thompson stated that "[a]lthough, since you are represented, I can sign on your behalf, I prefer to have both signatures on the form to be filed."

While Petitioner's appeal was pending, the Second Circuit issued its opinion in *Dillon v. Conway*, the case that Mr. Thompson raised in his supplemental objections to Judge Lowe's Report-Recommendation.  *Dillon v. Conway*, 642 F.3d 358 (2d Cir. 2011).

On August 23, 2011 the Second Circuit issued a mandate remanding the case to this Court.  Relying entirely on Petitioner's *pro se* addendum, the Second Circuit stated:

> [Petitioner] argues that equitable tolling of the AEDPA statute of limitations is appropriate because, inter alia, [his] counsel agreed to file the petition early; indeed completed the petition early; yet forced [him] to entrust his appeal to the vagaries of the mail by insisting on waiting for [his] unneeded signature to arrive by mail. [Petitioner] notes that if he had filed the petition pro se, it would have been deemed timely filed under the prison mailbox rule.  In light of this Court's decision in *Dillon v. Conway*, 642 F.3d 358 (2d Cir. 2011),

we remand to the district court for reconsideration of [Petitioner's] entitlement to equitable tolling and for any necessary additional factfinding.

(Dkt. No. 26.)

Although Petitioner listed this Court's treatment of the merits of his petition as one basis for his appeal and Respondent's brief mentioned several times that this Court had reached the merits of the case, the Second Circuit did not address the fact that Judge Scullin's order also dismissed the petition on its merits.

This Court received the mandate on September 2, 2011.  *Id.*  Thereafter, Petitioner, *pro se*, submitted 115 pages of documents supporting his position that he is entitled to equitable tolling of the AEDPA statute of limitations.  (Dkt. No. 28.)  The Court entered an order striking those documents from the record because Petitioner is represented by counsel.[2]  (Dkt. No. 30.) As will be discussed further below, the documents that Petitioner filed provide many key facts regarding the issue of equitable tolling that were not provided to the Court by counsel. Accordingly, the Clerk is directed to vacate the striking order (Dkt. No. 30) and restore the documents to the docket.

After the remand, Petitioner, through counsel,  requested that "additional factfinding be conducted through a hearing scheduled . . . at which the petitioner will offer testimony and exhibits relevant to the Court's determination concerning the application of equitable tolling." (Dkt. No. 29.)

---

[2]       On December 15, 2011 Petitioner filed a *pro se* notice of interlocutory appeal regarding the striking order.  (Dkt. No. 31.)  This does not divest the district court of jurisdiction. *See O'Neil v. Ponzi*, No. 5:09-CV-0983 (GTS/GHL), 2010 WL 502943, at *2 n.2 (N.D.N.Y. Feb. 9, 2010) (collecting cases).

On January 5, 2012 Judge Lowe conducted a telephone conference. During that conference, he asked counsel to submit letter-briefs discussing whether or not this Court needs to conduct an evidentiary hearing in order to comply with the Second Circuit's mandate. The parties submitted the requested letter briefs (Dkt. Nos. 34-36) and the matter is now ready for a report and recommendation.

## II.   ANALYSIS

### A.   Whether an Evidentiary Hearing is Required

Petitioner, through counsel, argues that an evidentiary hearing "is at minimum appropriate, and at most, required by the Circuit's order." (Dkt. No. 34 at 1.) Mr. Thompson suggests that the witnesses at such a hearing would include himself, Petitioner, and prison mail room personnel. *Id*.

Respondent argues that an evidentiary hearing is not necessary because the relevant facts are not in dispute. (Dkt. No. 36 at 1-2.) Respondent is correct. As discussed in the next section, the documents that Petitioner provided to the Second Circuit and to this Court demonstrate that Petitioner is entitled to equitable tolling of the AEDPA statute of limitations. Therefore, it is recommended that the Court deny Petitioner's request for an evidentiary hearing. (Dkt. No. 29.)

### B.   Whether Petitioner is Entitled to Equitable Tolling Under *Dillon v. Conway*

Under AEDPA, a one-year statute of limitations applies to applications for writs of habeas corpus. 28 U.S.C. § 2244(d). This limitation period is, however, subject to equitable tolling. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable toling if he or she shows that (1) he or she has been pursuing his or her rights diligently; and (2) some extraordinary circumstance stood in his or her way and prevented timely filing. *Id*. at 2562.

8

The diligence required for equitable tolling is reasonable diligence, not "maximum feasible diligence," "extreme diligence," or "exceptional diligence." *Id.* at 2565; *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). Here, the record before the Court demonstrates that Petitioner was reasonably diligent. Indeed, Respondent does not argue that Petitioner was not reasonably diligent. Petitioner began attempting to draft his own petition as soon as he received notice that the Court of Appeals had denied him leave to appeal. (Dkt. No. 28 at 4, 21-22, 24-35.) When he realized that he did not have the resources to prepare his own petition, he sought his sister's assistance and she began contacting attorneys. *Id.* at 5. Sometime before April 7, 2007 Mr. Thompson agreed to represent Petitioner. *Id.*; Dkt. No. 28-1 at 3. At that point, Petitioner had more than five months remaining before the expiration of the AEDPA statute of limitations. Over those five months, Petitioner and his sister remained in contact with Mr. Thompson, expressed concern about the timing of the filing of the petition, and worried about his lack of communication with them. (Dkt. No. 28-1 at 5.) Accordingly, Petitioner pursued his rights diligently.

The issue, then, is whether "some extraordinary circumstance stood in [Petitioner's] way and prevented timely filing." *Holland*, 130 S.Ct. at 2562. A "garden variety claim of excusable neglect" such as a "simple miscalculation that leads a lawyer to miss a filing deadline" is not an "extraordinary circumstance" that warrants equitable tolling. *Id.* at 2564. But while "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitation period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque*, 338 F.3d at 152 (emphasis in original). In other words, "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of

'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA." *Id*. at 152-53.

Courts have been particularly willing to find that an attorney's failure to meet a filing deadline is an "extraordinary circumstance" rather than "garden variety" neglect where, for instance, the attorney ignored pleas from the petitioner to be sure to timely file the petition (*Holland*, 130 S.Ct. at 2564; *Baldayaque*, 338 F.3d at 145; *Dillon*, 642 F.3d at 364) or the attorney failed to communicate with his or her client (*Baldayaque*, 338 F.3d at 145).

The record in this Court before the appeal demonstrated nothing more than garden variety excusable neglect.  Mr. Thompson advanced the argument that the petition's untimeliness was due entirely to a problem in the mail room at Attica.  He did not provide this Court with any evidence suggesting that other factors were at play.  As Judge Lowe and Judge Scullin concluded, such forseeable garden variety neglect is not an "extraordinary circumstance." However, the documents that Petitioner provided to the Second Circuit and to this Court after the appeal tell a different story.

On the record now before the Court, Petitioner's situation is virtually indistinguishable from that in *Dillon*.  There, the petitioner prepared his own petition but then, three months before the petition was due, retained counsel.  *Dillon*, 642 F.3d at 360.  Due to an unforseen increase in the attorney's caseload, he did not begin working on the petition until approximately six weeks before it was due.  *Id*.  The attorney spent "considerable time" tracking down evidence.  *Id*. at 361.  During this time, the petitioner's wife called the attorney several times, specifically mentioning her husband's concern about the statute of limitations.  *Id*.  Sixteen days before the petition was due, the attorney met with the petitioner at Attica, where the petitioner signed the

10

petition.  *Id*. at 360.  At that meeting, the petitioner "specifically asked [the attorney] not to wait

until the last day to file the petition."  *Id*.  at 360.  The attorney "told him that [he] would not wait

until the last day to file the petition."  *Id*.  The attorney, based on his personal involvement with a

case in the Eastern District of New York, believed that the AEDPA statute of limitations did not

begin to run until the day *after* a petitioner is denied leave to appeal by the New York Court of

Appeals.  *Id*. at 361-62.  He thus believed that the petition was due on November 30, 2007.

Despite his promise to the petitioner that he would "not wait until the last day to file the

petition," the attorney filed the petition on what he believed to be the last day: November 30,

2007.  Unfortunately, the petition was actually due on November 29, 2007.  *Id*. at 360.  The

district court found that equitable tolling did not apply because the record did not reveal any

extraordinary circumstances.  *Id*. at 362.  The Second Circuit found that "in the specific

circumstances presented . . . equitable tolling by one day was appropriate," vacated the decision,

and remanded for further proceedings.  *Id*. at 364.  The Second Circuit found that:

> Although miscalculating a deadline is the sort of garden variety
> attorney error that cannot *on its own* rise to the level of extraordinary
> circumstances, [this] case involves more than a simple
> miscalculation. [The attorney] in effect admitted affirmatively and
> knowingly *misleading* [the petitioner] by promising that he would file
> the petition before November 30, 2007. [The attorney] breached that
> promise when he failed to follow his client's instruction, with
> disastrous consequences that [the petitioner] could neither have
> foreseen nor prevented.

*Id*. (emphasis in original) (citations omitted).

Given the similarities between this case and *Dillon*, Petitioner is entitled to equitable

tolling.  Therefore, I recommend that the Court find the equitable tolling applies to excuse the

untimeliness of the petition.

C.      Merits of the Petition

Thirty pages of Judge Scullin's March 31, 2011 Order addressed the merits of the petition.  For the same reasons discussed in that thorough and well-reasoned document, I recommend that the Court deny the petition on its merits.

WHEREFORE, it is hereby

ORDERED that the Clerk vacate the striking order (Dkt. No. 30) and restore the documents filed by Petitioner (Dkt. No. 28)  to the docket; and it is further

RECOMMENDED that the Court find that equitable tolling applies to excuse the untimeliness of the petition; and it is further

RECOMMENDED that the Court deny the merits of the petition for the reasons discussed in Judge Scullin's March 31, 2011 Order.  (Dkt. No. 20.)

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: April 3, 2012
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge